**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROMAN DIAZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO.  EP-12-CV-00159-ATB** |
| | § | **(by consent)** |
| **CAROLYN W. COLVIN,** | § | |
| **ACTING COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,**[1] | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision.  Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties have consented to trial on the merits before a United States Magistrate Judge.  The case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas.  For the reasons set forth below, the Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff Roman Diaz filed his DIB application on July 15, 2009, alleging disability since April 23, 2009.  (R. 115).  Plaintiff's application was initially denied on August 10, 2009, and

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

then again denied upon reconsideration on November 13, 2009.  (R. 44, 49).  Plaintiff requested

a hearing on January 8, 2010, and the request was granted.  (R. 54).  On October 14, 2010, a

hearing was held before an Administrative Law Judge ("ALJ") at which Plaintiff, via interpreter,

and a vocational expert testified.[2] (R. 23-35).

On October 29, 2010, the ALJ issued a decision finding that Plaintiff could perform a full

range of light work despite experiencing the following severe impairments: diabetes, arthralgias,

mild osteoarthritis affecting his right knee, and degenerative disc disease.  (R. 19).  The ALJ

found that Plaintiff is unable to perform any past relevant work, however, based on Plaintiff's

age, education, work experience, and limitations, and pursuant to Medical Vocational Guidelines

(Grids) Rule 202.16, found that there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform. (R. 21-22).  On December 28, 2010, Plaintiff submitted a

request for review of the ALJ's decision, and it was denied by the Appeals Council on March 2,

2012.  (R. 1-6, 8).

Plaintiff filed his complaint on May 2, 2012.   (Doc. 6).   On July 2, 2012, the

Commissioner filed an answer.  (Doc. 14).  That same day, a transcript of the administrative

proceedings was filed. (Doc. 16).  On September 10, 2012, Plaintiff filed his brief in support of

reversing the Commissioner's decision and remanding for an award of benefits or, alternatively,

for additional administrative proceedings. (Doc. 22).  On October 31, 2012, the Commissioner's

brief in support of the decision to deny benefits was filed.  (Doc. 24).  The case was then

---

[2] The location and live participants of the ALJ hearing are unclear.  According to the transcript, the hearing was held in Fort Worth, Texas on October 14, 2010 and all parties appeared live before an Unidentified ALJ.  *See* (R. 23, 25).  The ALJ Decision identifies the ALJ as Donna Montano and states that the ALJ hearing was instead conducted on October 14, 2010, in Albuquerque, New Mexico via video conference with the claimant and his attorney appearing in El Paso, Texas.  (R. 17, 22).  Because neither party raised a possible issue, this Court will ignore the discrepancy.

transferred to this Court on December 6, 2012.  (Doc. 25).  This matter is now ripe for decision.

## II.  FACTUAL BACKGROUND

Plaintiff was born on April 26, 1961, making him forty-nine years old at the time of the ALJ's decision.  (R. 115).[3]  He attended school through the sixth grade and is unable to speak, read, or write English.  (R. 138, 142).  He has previous work experience as a long-haul truck driver and as manager of a junk yard.  (R. 26, 32, 144).  He testified that he can no longer work due to back and leg cramps as well as diabetes.  (R. 26-31).  In particular, he testified that the diabetes caused joint pain, headaches, stomach pain, and hand numbness and tingling.  (R. 28-29).  Plaintiff also estimated that he could only walk a block and a half and also that he could only sit for ten to fifteen minutes at a time.  (R. 29, 30).  Plaintiff testified to using a non-prescribed cane and needing to lie down two or three times per day for up to an hour.  (R. 31).  Plaintiff also complained of side effects brought about by his medication, including sleepiness, headaches, and nausea.  (R. 30-31).

## III.  ISSUES

Plaintiff presents the following issues for review:

1.  Whether the ALJ properly considered the opinion of the Plaintiff's treating physician when determining Plaintiff's residual functional capacity.  (Doc. 22:3).

2.  Whether the ALJ's residual functional capacity determination is supported by substantial evidence despite the ALJ's failure to include limitations related to Plaintiff's sit/stand option and Plaintiff's inability to communicate in English.  (Doc.

---

[3] Reference to court documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])."  Reference to the record of the administrative proceedings is designated by "(R. [page number(s)])."

22:7-12).

3.  Whether the ALJ committed error by submitting to the vocational expert an incomplete hypothetical not containing all of Plaintiff's limitations.  (Doc. 22:12).

## IV.  DISCUSSION

### A.      Standard of Review

This Court's review of the Commissioner's decision to deny benefits is limited to two inquires: (1) whether the decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.  *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir. 2001), citing *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995); 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  A finding of "no substantial evidence" will be determined only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir. 1988) (per curiam) (citing *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

The determination of whether there is substantial evidence to support the fact findings of the Commissioner does not involve reweighing the evidence, or trying the issues de novo. *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir. 1989).   The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance.  *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988).  Conflicts in the evidence

are for the Commissioner and not the courts to resolve. *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).

The court's role is to "scrutinize the record in its entirety to determine whether substantial evidence supports" the Commissioner's findings. *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir.1992) (citing *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir. 1983) (per curiam)). "The role of the courts in this quintessentially administrative process is extremely narrow" and "the Commissioner's decision is granted great deference." *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir. 1975); *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995). If the Commissioner applied the proper principles of law and his findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala,* 1 F.3d at 360. Conversely, if the Commissioner's findings are not supported by substantial evidence, or the Commissioner incorrectly applied the law, the reviewing court may, *inter alia,* reverse the Commissioner's decision and remand the case for further proceedings. *Murkeldove v. Astrue,* 635 F.3d 784, 792 (5th Cir. 2011).

## B.    Evaluation Process

"Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Sinayi v. Astrue*, No. 3:11-CV-2770-D, 2012 WL 3234414, at *2 (N.D. Tex. Aug. 9, 2012) (quoting 42 U.S.C. § 423(d)(1)(A)). In determining disability, the ALJ makes his findings according to a sequential five-step evaluation. 20 C.F.R. § 404.1520. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the

Commissioner's analysis. *Greenspan v. Shalala*, 38 F.3d at 236.

In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of his medical condition or his age, education, and work experience. 20 C.F.R. § 404.1520(b).

The ALJ then determines under the second step whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101. Any application of this standard will be presumed incorrect unless "the correct standard is set forth by reference to this opinion (*Stone*) or another of the same effect, or by an express statement that the construction we give to [the regulation] is used." *Id.* at 1106. An individual who does not have a "severe impairment" will not be found to be disabled. 20 C.F.R. § 404.1520(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations will be considered disabled without the consideration of vocational factors. 20 C.F.R. § 404.1520(d). If the claimant does not qualify under the Listings, the evaluation proceeds forward. 20 C.F.R. §

404.1520(e).

Before commencing the fourth step, the ALJ assesses the claimant's residual functional capacity, which is the claimant's maximum work capability. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 404.1520(e). The ALJ then proceeds to step four and uses the claimant's residual functional capacity to determine whether the impairment prevents the claimant from performing his past relevant work.[4] 20 C.F.R. § 404.1520(f). If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

If an individual's impairment precludes him from performing his past relevant work, the fifth and final step evaluates the claimant's ability to do other work given his residual capacities, his age, education, and work experience. If an individual's impairment precludes him from performing any other type of work, he will be found to be disabled. 20 C.F.R. § 404.1520(g).

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps of the sequential analysis, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of the opinion testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*,

---

[4] Past relevant work is work that was done by the claimant within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 416.960(b)(1).

684 F.2d 1144, 1155 (5th Cir. 1982).  The Commissioner must demonstrate that other work exists in significant numbers in the national economy that the claimant can do given the claimant's residual functional capacity, age, education, and work experience.  *Id.* at 1153.  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.  *Anderson v. Sullivan*, 887 F.2d at 632.

**C.     The ALJ's Decision**

The ALJ issued a decision on October 29, 2010.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 23, 2009, the alleged onset date.  (R. 19).    At step two, the ALJ determined that Plaintiff had the following severe impairments: diabetes, arthralgias, mild osteoarthritis affecting his right knee, and degenerative disc disease.  (R. 19).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment under step three.  (R. 19).  *See* 20 C.F.R. § 404.1520(d)-(e).

The ALJ further determined that Plaintiff has the residual functional capacity to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b).  (R. 19).  Based on this residual functional capacity, at step four the ALJ concluded that Plaintiff was unable to perform any past relevant work.  (R. 21).

At step five, the ALJ determined that based on Plaintiff's age, education, work experience, residual functional capacity finding, and pursuant to Medical Vocational Guidelines (Grids) Rule 202.16, there are jobs that exist in significant numbers in the national economy that

Plaintiff can perform.  (R. 21-22).  Accordingly, because the ALJ believed Plaintiff was capable of performing other work in the national economy under step five, the ALJ ruled that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 22).

**D.     Appeals Council Proceeding**

Plaintiff appealed the ALJ's decision to the Appeals Council on December 28, 2010.  (R. 7-13).   In connection with his administrative appeal, Plaintiff submitted for the first time a "Medical Source Statement of Ability To Do Work-Related Activities" ("MSS") written by Dr. Hector Pacheco, dated October 12, 2010.[5]  (R. 11-13, 289-292).  In his assessment, Dr. Pacheco stated that Plaintiff is limited by his lumbar degenerative disease and lumbagia to lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking at least two hours in an eight-hour workday; sitting about six hours in an eight-hour workday; pushing and/or pulling limited his lower extremities; occasionally climbing ramps/stairs/ladder/rope/scaffold, balancing, kneeling, crouching, and stooping; never crawling; occasionally reaching in all directions; and limited exposure to vibration, humidity/wetness and hazards. (R. 289-292).

The Appeals Council entered the MSS into the record.  (R. 4).  It then summarily noted that it had considered the additional evidence, but the information did not provide a basis for changing the ALJ's decision.  (R. 2).  The Appeals Council affirmed the ALJ's ruling.  (R. 1-3).

**V.   ANALYSIS**

Plaintiff claims that the ALJ's determination of the Plaintiff's residual functional capacity is not supported by substantial evidence.  Plaintiff challenges the ALJ's ruling on three grounds.

---

[5] Although the MSS is dated October 12, 2010, two days before the ALJ hearing held on October 14, 2010, the Plaintiff did not submit it to the ALJ.

Specifically, he argues that the ALJ did not properly consider the opinion of the Plaintiff's treating physician when determining his residual functional capacity.  (Doc. 22:3).  He also argues that the residual functional capacity determination was not supported by substantial evidence because the ALJ failed to include all limitations relating to the Plaintiff's impairments. In particular, Plaintiff alleges that the ALJ failed to include limitations related to Plaintiff's sit/stand option and his inability to communicate in English.  (Doc.22:7-12).  Finally, the Plaintiff also argues that the hypothetical presented to the vocational expert did not account for all of his limitations.  (Doc. 22:12).

**A.      The Opinion of the Plaintiff's Treating Physician Was Not Properly Considered**

Plaintiff contends that the ALJ did not properly consider the opinion of the Plaintiff's treating physician.   In support of his argument, Plaintiff submitted new evidence of Dr. Pacheco's opinion to the Appeals Council in the form of an MSS.  In his brief, Plaintiff cites to this MSS to argue that the ALJ did not properly consider the opinion of Dr. Pacheco.  (Doc 22:3-7).  In response, the Commissioner rightly notes that the MSS was not before the ALJ prior to her October 29, 2010 decision.  (Doc. 24:3).  Although dated prior to the decision, the MSS was first submitted to the Appeals Council on December 28, 2010.   (R. 4, 11-13, 289-292). Consequently, the ALJ could not have considered the MSS because it was not before her at the time of the hearing.

Although Plaintiff does not argue that the Appeals Council committed legal error by failing to properly consider the MSS, the Court will address Plaintiff's argument in that context. Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based.  *Higginbotham v. Barnhart,* 405 F.3d 332, 337 (5th Cir. 2005); *see also Call v. Barnhart*, No. CIV.A.SA04CA0695-XR, 2005 WL

1862625, at *3 (W.D. Tex. Aug. 4, 2005).  If new evidence is presented while the case is pending review by the Appeals Council, a court will review the record as a whole, including the additional evidence, to determine whether the Commissioner's findings are still supported by substantial evidence.  *See Higginbotham v. Barnhart*, 163 Fed.App'x. 279, 281–82, 2006 WL 166284 at *2 (5th Cir. Jan.10, 2006) (unpubl.) ("*Higginbotham II*"); *see also Jones v. Astrue*, 228 Fed.App'x. 403, 406–07, 2007 WL 1017095 at *3 (5th Cir. Mar. 29, 2007), *cert. denied*, 552 U.S. 1064, 128 S.Ct. 707, 169 L.Ed.2d 557 (2007) (warning against remanding cases based on new evidence presented to the Appeals Council without meaningful regard for the substantial evidence standard).  Where new medical evidence is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination, the case should be remanded so that the Appeals Council can fully evaluate the treating source statement.  *See, e.g.*, *Brown v. Astrue*, No. 3–10–CV–00275–O–BK, 2010 WL 3895509, at *4–6 (N.D. Tex. Sept. 13, 2010; *Lee v. Astrue*, No. 3–10–CV–155–BH, 2010 WL 3001904, at *7 (N.D.Tex. July 31, 2010); *Stewart v. Astrue*, No. 7–07–CV–052–BD, 2008 WL 4290917, at *4 (N.D.Tex. Sept.18, 2008).

The evidence submitted to the Appeals Council must be both new and material to trigger a remand.  *Call*, 2005 WL 1862625, at *3 (citing 20 C.F.R 404.970(b)).  The MSS includes a medical assessment of Plaintiff's residual functional capacity by Dr. Pacheco.  This is new evidence and meets the first requirement.

Evidence is material if: (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination.  *Castillo v. Barnhart*, 325 F.3d 550, 551–52 (5th Cir. 2003).  Evidence of a later-acquired disability or a subsequent deterioration of a non-disabling condition is not material.  *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985).

Dr. Pacheco's MSS is dated October 12, 2010.  (R. 292).  The ALJ's decision was submitted on October 29, 2010.  (R. 22).  The MSS thus relates to the time period for which the disability benefits were denied and meets the first requirement.

There is a reasonable probability that new evidence would have changed the outcome of the disability determination if it leads to legal error.  "When the Appeals Council makes a decision, it will follow the same rules for considering opinion evidence as administrative law judges follow."  20 C.F.R. § 404.1527(f)(3); *see also Newton*, 209 F.3d at 459.  One of these rules is that the opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Spellman v. Shalala,* 1 F.3d 357, 364 (5th Cir.1993).  If it is found that a treating source's medical opinion is not well-supported or is inconsistent with other evidence, the opinion should not be rejected; rather, the opinion is merely not entitled to "controlling weight." *See* SSR 96–2p.

Under Section 404.1527(d)(2), before the Commissioner can reject a treating doctor's opinion, he must consider the following six factors: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support for the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.  *Newton*, 209 F.3d at 455–56. When an ALJ fails to apply the six-factor test, the case should typically be remanded.  *Id.* at 456.  *See also Jones v. Astrue*, 2008 WL 3004514, *4–5 (S.D. Tex.2008) (remand required where the summary denial of a request for review provided no indication that the Appeals Council evaluated the treating source statement

as required by SSR 96–5); *Green v. Astrue*, 2008 WL 3152990, *7–9 (N.D.Tex.2008) (remand required where the summary denial of a request for review provided no indication that the Appeals Council evaluated the treating source statement pursuant to the six-factor test set forth in 20 C.F.R. § 404.1527(d)); *Stevenson v. Astrue*, 2008 WL 1776504, *3–4 (N.D.Tex.2008) (same); cf. SSR 96–5 (providing that adjudicators must weigh medical source statements and residual functional capacity assessments and "provide appropriate explanations for accepting or rejecting such opinions").

Plaintiff alleges that the ALJ (and consequently the Appeals Council) was obligated to perform the six factor test before the opinion of Dr. Pacheco, the treating physician, was rejected.  The MSS proffered as new and material evidence mainly consists of checked boxes on a form indicating that Plaintiff could perform a full range of light work with the exception of crawling, reaching and environmental and lower-extremity limitations.  (R. 12-13, 290-291).  It further states that Plaintiff is physically limited by his lumbar degenerative disease and that Plaintiff's lumbalgia may be exacerbated by certain environmental factors.  (R. 290-291, 292).  The ALJ's decision is not inconsistent with this finding, however, the MSS provides more information that, although unavailable to the ALJ at the time of the hearing, was available to the Appeals Council.  Dr. Pacheco's opinion of the Plaintiff's physical abilities significantly conflicts with the ALJ's residual functional capacity determination with respect to the crawling and the environmental and lower-extremity limitations.  (*Id.*)

The Commissioner's defense is that because the MSS was conclusory, the good cause exception applies and the six factor test was not necessary.  A treating physician's opinion may be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic

techniques, or is otherwise unsupported by the evidence." *Id.* at 455–56 (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

On its own, the MSS would be conclusory.  However, the Court's review of the evidence reveals that the MSS is supported by medically accepted techniques.  Both parties in their briefing appear to have overlooked Dr. Pacheco's original assessment, done in conjunction with Elizabeth Pimenthal, Registered Nurse Practitioner,[6] and dated October 12, 2009.[7]  (R. 251-52). An MRI of the lumbar spine without contrast was performed and showed a pattern of multilevel marginal endplate osteophytosis and hypertrophic zygapophyseal osteoarthrosis.  (R. 252).  The MRI detected the presence of Schmort's nodule formations in the inferior endplates of the L2 and L3 vertebral bodies.  (R. 252).  The MRI also showed degenerative disc disease with mild posterior protrusion producing remodeling of the ventral epidural fat in the L5-S1 vertebra.  (R. 252).  Along with these findings, the medical impression was that there was marked lumbar spondylosis.  (R. 252).

In her decision, the ALJ referenced the MRI and listed some of the findings.  (R. 20). The ALJ noted that an MRI was performed "in October 2009 which identified multi-level lumbar spondylosis; and disc protrusions from L3-S1 without neuroforaminal involvement" and that aquatic therapy was recommended.  (R. 20).  Partly based on this examination, the ALJ made her residual functional capacity determination and found that "[t]he record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled

---

[6]  As a nurse practitioner, Pimenthal is not considered an "acceptable" medical source under the regulations. *See* SSR 06–03p; 20 C.F.R. § 404.1513(d); *see also Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991) (recognizing that the regulations accord less weight to sources other than medical doctors).

[7]  The examination is signed by Dr. Pacheco.  (R. 251).  Likewise, the examination conducted on November 23, 2009, is signed by Dr. Pacheco.  (R. 256).  The follow-up physical therapy report lists Dr. Pacheco as the referring physician.  (R. 254, 258).

or even has limitations greater than those determined in this decision." (R. 20). The MSS significantly conflicts with this statement because it contains a medical assessment by a treating physician indicating that Plaintiff does have greater limitations than those determined by the ALJ.

Under Section 404.1513(c) of the regulations, a medical assessment of a patient's residual functional capacity (based on the physician's own observations and objective medical findings) is different from and is not intended to become the administrative assessment of the ALJ (an administrative determination based upon all the relevant evidence). SSR 82-30. Furthermore, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it in its denial of review. "[T]he requirement of a detailed discussion of additional evidence was suspended by a memorandum from the Executive Director of Appellate Operations[.]" *See Higginbotham,* 405 F.3d at 335 n. 1. Despite that suspension, the Appeals Council must still provide a detailed discussion of all new evidence under 20 C.F.R. § 404.1527(f)(3) and by failing to do so, the Appeals Council committed legal error when it failed to follow the six factor procedure.

The Court concludes that the MSS is new and material because it was not before the ALJ at the time she made her determination, it relates to the time period for which benefits were denied, and there exists a reasonable possibility that it would have changed the outcome of the Commissioner's determination. As such, the Court believes the new evidence dilutes the record to such an extent that it renders the ALJ's decision insufficiently supported. *Higginbotham II*, 2006 WL 166284, at *3. Accordingly, this case should be remanded for further consideration of the MSS.

**B.      Plaintiff's Remaining Points of Error**

Because the Court finds the case should be remanded for reconsideration based on the Appeal Council's error as it pertains to Plaintiff's treating physician, it will not review Plaintiff's remaining claims that the ALJ allegedly failed to accommodate the Plaintiff's need for a sit/stand option and the Plaintiff's inability to speak English, and that the ALJ committed error by submitting an incomplete hypothetical to the vocational expert.  On remand, Plaintiff can raise those issues and any other remaining issues before the ALJ.  20 C.F.R. § 416.1483 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

### VI.  CONCLUSION

For the reasons set forth above, the Court concludes that the MSS submitted by the Plaintiff to the Appeals Council is new and material, and that it dilutes the record to such an extent that the ALJ's decision is insufficiently supported.  Consequently, the Court finds that the Appeals Council committed legal error when it failed to use the six factor test required by the Social Security Administration's regulations.  The decision of the Commissioner is, therefore, **REVERSED** and the case is **REMANDED** for further proceedings.

On remand, the MSS shall be considered pursuant to federal regulations.

A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SIGNED** and **ENTERED** on August 30, 2013.

_____

ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE